IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMIAH MOORE,      :<br>    Plaintiff,            :<br>                          :<br>    v.                    :<br>                          :<br>MONTGOMERY COUNTY         :<br>CORRECTIONAL FACILITY, et al., :<br>    Defendants.           : | CIVIL ACTION NO. 21-CV-1211 |

**MEMORANDUM**

**SÁNCHEZ, C.J.**                                                                          **DECEMBER  21, 2021**

This matter comes before the Court by way of an Amended Complaint (ECF No. 7), brought by Plaintiff Jeremiah Moore, proceeding *pro se*.  By Order dated March 25, 2021, the Court previously determined that Moore was not able to afford to pay the filing fee in this action, granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, dismissed his original Complaint pursuant to Federal Rule of Civil Procedure 8 and 28 U.S.C. § 1915(e)(2)(B)(ii), but granted Moore leave to file an amended complaint.  For the following reasons, Moore's Amended Complaint will be dismissed with prejudice as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**I.      FACTUAL ALLEGATIONS**[1]

---

[1] The facts set forth in this Memorandum are taken from Moore's Amended Complaint and all the documents and exhibits attached thereto.  Where the Court cites a page number rather than a paragraph number, the Court will adopt the pagination supplied by the CM/ECF docketing system.

Moore, a former prisoner,[2] filed this civil rights action pursuant to 42 U.S.C. § 1983 with respect to the events that occurred while he was incarcerated at the Montgomery County Correctional Facility in 2020.  Moore named the following Defendants in this action: (1) the Montgomery County Correctional Facility ("MCCF");[3] (2) Dr. G. Andrew Szekely, the President of the Board of Inspectors at MCCF; (3) Nancy L. Wieman, the Vice President of the Board of Inspectors at MCCF; Board of Inspectors members (4) Eileen Behr, (5) William J. Catania, and (6) Stanley M. Turtle; (7) MCCF Warden Julio M. Algarin; (8) MCCF Deputy Warden Sean P. McGee; (9) MCCF Assistant Warden Mark S. Murray; MCCF Corrections Officers (10) Brightler, (11) Anderson, (12) O'Neil, (13) Berger, (14) Lehman, and (15) Mercer; (16) MCCF Librarian Keely; and (17) MCCF Counselor Coveney.  (ECF No. 7 at ¶¶ 4-19.)

Moore's Amended Complaint sets forth a sporadic and somewhat unrelated amalgamation of factual allegations regarding events that occurred while he was incarcerated at MCCF in August of 2020, all of which he contends violated a number of his constitutional rights.[4]  As best as the Court can discern, these allegations break down into five specifics

---

[2] On September 13, 2021, the Clerk of Court docketed a Notice of Change of Address for Moore to a residential address located in Philadelphia, rather than the prior address on file for Moore at SCI-Phoenix.  (ECF No. 8.)

[3] Moore only named MCCF as a Defendant in the caption of his Amended Complaint.

[4] Moore attached a number of exhibits to his Amended Complaint, including, but not limited to, multiple grievances, property reports, request forms, and several misconduct reports.  (ECF No. 7 at 13-44.)  In screening Moore's Amended Complaint pursuant to § 1915(e)(2)(B), the Court may properly consider all of these exhibits.  *See Harris v. U.S. Marshal Serv.*, Civ. A. No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)).  Accordingly, the Court will refer to these exhibits throughout this Memorandum as necessary.

categories: (1) allegations concerning Moore's August 8, 2020 misconduct for an altercation with another inmate and related disciplinary proceedings and grievances arising from that incident, (*see id.* ¶¶ 22-29, 42, 53); (2) allegations about the unavailability of washers and dryers in the housing section, (*see id.* ¶ 26); (3) generalized allegations that his grievances on several issues were improperly handled, processed, disregarded, denied, or ignored, or that he was not provided with requested grievance forms, or failed to receive a response to his grievances, (*see id.* ¶¶ 25, 29-31, 33-34, 37-40, 46, 48, 50); (4) allegations that the law librarian denied him use of law library services when he was unable to use the services of a notary,[5] (*see id.* ¶¶ 32, 49-50); and (5) allegations regarding Moore's requests for new prison issued footwear and his inability to grieve this matter. (*See id.* at ¶¶ 35-37, 47.)

With respect to the August 8, 2020 Misconduct Report, it appears that on Saturday, August 8, 2020, Correctional Officer Hunter[6] issued a Misconduct Report for Moore for the following violations: "1. Fighting[;] 2. Creating a hazardous situation[;] 3. Disruption [o]f normal facility routine[.]" (ECF No. 7 at 13.) The Misconduct Report explains that on that date, Moore "engage[d] in a mutual altercation with inmate [Javier] Rodriguez[.]" (*Id.*) Hunter noted that "[f]ighting is a specific violation of the rules and regulations of this facility . . . [and that Moore] could have caused harm to not only [him]self but the other inmate involved, inmates in the area and additional staff responding" to the incident. (*Id.*) Hunter also explains that Moore

---

[5] Moore's allegations regarding categories 2, 3, and 4 are not particularly detailed and will not be set forth here. The full allegations of the Amended Complaint with respect to these issues are set forth *infra*.

[6] Hunter is not named as a Defendant in this action.

"disrupted the normal facility routine by taking [Hunter] away to generate th[e] misconduct and [by taking] other staff members [away] to deal with th[e] situation." (*Id.*)

Moore alleges that after he received the August 8, 2020 misconduct report, the MCCF "Response Team placed . . . [him] in the [Restricted Housing Unit] Section of the facility, Pod K Cell 437." (*Id.* ¶ 22.) Specifically, he claims that "Defendant Mercer authorized" this "seizure" of Moore after the Response Team placed him in the RHU. (*Id.* ¶ 42.) On Monday, August 10, 2020, Moore filled out a "Request Form", attached as Exhibit C, "informing the authorities" that he had not been "allowed a hearing but [he] was being restricted of [his] rights and privileges[.]"[7] (*Id.* ¶ 24.) On August 12, 2020, "Moore had a disciplinary hearing . . . before Defendant Coveney, C.O. Stocchl, and D'Addona" and was "penalized to serve 15 days of RHU (hole) time." (*Id.* ¶ 27.) Moore also attached as Exhibit D a copy of the "Report of Disciplinary Hearing Board" which indicates that Moore entered a plea of guilty to the misconduct at issue, and that the "I/M [inmate] agrees w/ officer's reports[.]" (*Id.* at 16.) Moore alleges that he was released from the hole on August 27, 2020 "after serving 19 days total RHU confinement time." (*Id.* ¶ 28.)

Moore also alleges that he received a Misconduct Report on August 13, 2020 after reporting to Defendant Brightler that he needed a new "pair of county issued footwear." (*Id.* ¶ 35). Moore attached a copy of this Misconduct Report as Exhibit H to the Amended Complaint, which charged Moore with "1) Tampering with security equipment[;] 2) Creating a Hazardous

---

[7] Moore also attached an unsigned and undated "Inmate Grievance Response" as Exhibit E.B. to his Amended Complaint which sets forth that he was "informed that inmates are not permitted to file a grievance against a misconduct" and that the "proper procedure is to appeal the findings of the hearing board in 5 business days." (*Id.* at 20.) While Moore had "grieved that he was not granted a full board hearing[,]" this Response details that Moore "did receive a full Board hearing on 8-12-2020" and that "[t]his hearing was held three (3) business days post misconduct." (*Id.*)

Situation[; and] 3) Disruption of Normal Institutional Routine[.]" (*Id.* at 44.) The Misconduct Report sets forth that on August 13, 2020 while in the yard of K pod, Moore told Brightler "that he needed new skippies." (*Id.*) When Brightler questioned Moore as to the need for new shoes, Moore explained that he threw his skippies at a hand ball that was stuck in the wire in an attempt to knock it down, but that his shoes also became stuck in the razor wire. (*Id.*) Brightler thereafter wrote Moore up for "tampering with security equipment and causing a potential hazardous situation [(]if the razor wire would have come off and injured others in the yard[)]." (*Id.*) Brightler also noted that Moore's actions stalled Brightler from touring other portions of MCCF and postponed their yard recreation time. (*Id.*) Following this incident, Moore alleges that he did not receive new footwear for up to 5 days despite asking multiple times. (*Id.* ¶ 36.)

Based on the allegations of the Amended Complaint, Moore seeks compensatory damages in the amount of $2 million, punitive damages in the amount of $2.5 million, and a declaration that the Defendants violated his constitutional rights and his rights under the Declaration of Human Rights. (*Id.* ¶¶ 56-58.)

## II.    STANDARD OF REVIEW

Since Moore is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Moreover, 28 U.S.C. § 1915(e)(2)(B)(i) requires the Court to dismiss the Amended Complaint if it is frivolous. A

complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Moore is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular

'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Claims Against MCCF

In the caption of his Amended Complaint, Moore names the Montgomery County Correctional Facility as a Defendant in this case.[8] Any § 1983 claims against MCCF must dismissed as frivolous because a correctional facility is not a "person" under Section 1983. *Cephas v. George W. Hill Corr. Facility*, Civ. A. No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, Civ. A. No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976); *see also Wiggins v. Montgomery Cty. Corr. Facility*, Civ. A. No. 87-6992, 1987 WL 14721, at *1 (E.D. Pa. Nov. 16, 1987) ("[T]he Montgomery County Correctional Facility is not a person under § 1983. For this reason alone, the complaint must be dismissed.").

### B. Claims Regarding Violations of the Inmate Handbook

Moore alleges that when he arrived at MCCF on September 13, 2019, he "was given a[n] Inmate Guidelines Handbook and instructed to follow it." (ECF No. 7 ¶ 20.) A copy of MCCF's Inmate Guidelines is attached to Moore's Amended Complaint as Exhibit G. At various points in the Amended Complaint, it appears that Moore contends certain portions of the Inmate Guidelines Handbook were explicitly violated or not fully enforced. (*See, e.g., id.* ¶ 26 ("The

---

[8] The Court notes that Moore does not make any substantive allegations against MCCF itself in the body of the Amended Complaint. However, in an abundance of caution and construing Moore's Amended Complaint liberally, the Court will address any potential claims against MCCF to the extent Moore seeks to raise them.

Inmate Handbook promised the use of washers and dryers. There exhisted [sic] no washer nor [dryers] that where [sic] available for the housing section as promised by [the] Inmate Handbook."); *id.* ¶ 54 ("The Board of Inspectors and Administration caused me to be placed on medication by not rightfully enforcing [the] Inmate Guidelines Handbook[.]").)

To the extent Moore's Amended Complaint can be liberally construed to raise § 1983 claims against Defendants based on alleged violations of the Inmate Guidelines Handbook, Moore cannot state a plausible claim. "As many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, Civ. A. No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, Civ. A. No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, Civ. A. No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)). Accordingly, to the extent that Moore seeks to assert any § 1983 claims against Defendants based on alleged violations of MCCF's Inmate Guidelines Handbook, these claims will be dismissed. As amendment of these claims would be futile, the dismissal of these claims will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should be generally be granted "unless amendment would be inequitable or futile.")

### C. Claims for Violations of the Universal Declaration of Human Rights

In the subsection of Moore's Amended Complaint entitled, "V. Legal Claims", Moore cites approximately twenty separate Articles from the United Nations' Universal Declaration of

Human Rights.⁹  (*See, e.g.*, ECF No. 9 ¶¶ 42-50, 53-54) (referring to Articles 1-11, 17--22, 25-29).  The Court understands these citations as Moore's attempt to assert claims based on Defendants' alleged violations of the Universal Declaration of Human Rights.

As the United States Court of Appeals for the Third Circuit has recognized, "the Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action."  *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)) (explaining that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law").  District courts throughout this Circuit have routinely dismissed claims brought under the Universal Declaration of Human Rights with prejudice for failure to state a claim or as legally frivolous.  *See, e.g.*, *Best v. S.C.I. Huntingdon*, Civ. A. No. 19-01599, 2019 WL 5866707, at *5 (M.D. Pa. Oct. 9, 2019), *report and recommendation adopted*, 2019 WL 5868259 (M.D. Pa. Nov. 8, 2019) (recommending dismissal of claims under the Universal Declaration of Human Rights for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) in a prisoner civil rights action); *Hamilton v. Dolce*, Civ. A. No. 18-2615, 2019 WL 4509375, at *3 (D.N.J. Sept. 19, 2019) (dismissing with prejudice *pro se* prisoner's claims for violations of the Universal Declaration of Human Rights); *Pavalone v. Pres. Mgmt. Inc.*, Civ. A. No. 18-191, 2019 WL 1117931, at *3 (M.D. Pa. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1117919 (M.D. Pa. Mar. 11, 2019) (recommending dismissal of non-prisoners' claims for the "alleged violation[s] of their rights under the Universal Declaration of Human Rights . . . as

---

⁹  A PDF copy of the Universal Declaration of Human Rights is available at https://www.un.org/sites/un2.un.org/files/udhr.pdf (last visited Dec. 13, 2021).

legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)).  Accordingly, to the extent Moore raises claims against the Defendants for violating the Universal Declaration of Human Rights, the claims are dismissed with prejudice as any amendment would be futile.

### D. Claims against Members of the MCCF Board of Inspectors and Administrators at MCCF

Five of the Defendants Moore names in his Amended Complaint – Szekely, Wieman, Behr, Catania, and Turtle – are the President, Vice President, and remaining members of the Board of Inspectors for MCCF.  However, Moore makes no allegations that any of these five individuals had any personal involvement in the events of August 2020 that resulted in a violation of his constitutional rights.  Rather, Moore only makes conclusory allegations against these Defendants, claiming that they are "legally responsible" for inspections of the facility, upholding and enforcing policies and procedures, the regulation of the staff, and ensuring the welfare of the inmates.  (*See generally* ECF No. 7 ¶¶ 4-8.)

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode*, 845 F.2d at 1207; *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Because Moore makes no allegations describing how these individual members of the Board of Inspectors are personally responsible for any alleged constitutional violations with respect to the events of August 2020, his claims against these individuals will be dismissed with prejudice for failure to state a claim as it appears any attempt to amend against these individuals would be futile.

Moore also names MCCF Warden Algarin, MCCF Deputy Warden Sean P. McGee, and MCCF Assistant Warden Mark S. Murray.  However, much like the members of the Board of Inspectors, Moore does not make any specific allegations that any of these individuals had personal involvement in the events of August 2020 that he claims resulted in a violation of his constitutional rights.  As a result, the claims against these individuals must also be dismissed with prejudice as amendment would be futile.  *See Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676.

### E. Claims Related to Grievances

Moore also makes a number of generalized allegations that his grievances were improperly handled, processed, disregarded, denied, or ignored, or that he was not provided with requested grievance forms, or failed to receive a response to his grievances.  (*See, e.g.*, *id.* ¶ 25 ("Defendant O'Neil regarded my grievance as invalid."); *id.* at ¶ 29 ("Defendant Lehman neglected to acknowledge . . . [Moore's] grievance by the disregard of the grievance response."); *id.* at ¶ 30 ("Moore requested . . . 2 grievance appeals and 2 grievances" from his counselor Defendant Covoney who "denied . . Moore the right to redress by stating 'No we're not doing that right now.'"); *id.* ¶ 31("Moore requested a grievance via tablet request and was denied again by . . . Covoney."); *id.* ¶ 34, ("Moore right to grievance appeal was silenced and suppressed by actions committed" by Defendants); *id.* ¶ 37 ("Moore was denied his right to grieve this matter by actions committed" by Defendants); *id.* ¶¶ 38-40, 46; *id.* ¶ 48 ("Defendant Anderson conspired with . . . Brightler in that he purposely did not submit [Moore's] 1st level grievance via request form."); *id.* ¶ 50.)  Moore's constitutional claims related to his grievances and how they were handled, processed, ignored, or disregarded, or otherwise addressed must be dismissed with prejudice because "[p]rison inmates do not have a constitutionally protected right

to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).  These claims will be dismissed with prejudice since amendment would be futile.

### F. Denial of Notary Services in the Law Library

Moore alleges that on or about August 3, 2020 Defendant Keely "denied [him] law library service; the use of nortary [sic] for law purposes[.]" (ECF No. 7 ¶ 32.)  Relevant to Moore's claims regarding notary services in the law library, Exhibit F.1 to Moore's Amended Complaint is the signature page of a grievance form he appears to have submitted on August 4, 2020 in relation to the alleged denial of notary services at the law library.  (ECF No. 7 at 21.)  In the section entitled "Description of Problem", Moore explains that he "requested to have a piece of mail notarized" for a § 1983 action (although he does not specify which of his existing § 1983 actions this mail was related to or whether it was a new § 1983 action).  (*Id.*)  Exhibit F.2 to the Amended Complaint is an "Inmate Grievance Response" dated August 13, 2020.  (*Id.* at 22.)  The grievance officer who completed the form noted that he spoke to Moore regarding the August 4, 2020 grievance and that Moore stated that he "wished to have a self generated document notarized to create a 'record of it's existence' and assurance that the document when mailed reached it's [sic] intended destination." (*Id.*)  The officer thereafter "advised [Moore] that a notarized document [would] not ensure it is delivered or received by a third party." (*Id.*)  The officer also noted in the Response that the "Facility Notary . . . afforded [Moore] the opportunity to send the document via certified mail at [his] cost to accomplish [the] requested outcome."  (*Id.*)  The Response concludes by noting that the opportunity to send the document via certified mail was still available to Moore.  (*Id.*)

Moore contends that the denial of notary services violated rights his constitutional rights, and it appears that Moore seeks to bring a claim for denial of access to the courts based on the denial of notary services at MCCF under the First and Fourteenth Amendments. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' — that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *see also Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury.") This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*

Here, Moore's Amended Complaint does not specify how Defendant Keely's denying him use of notary services in the law library on a single occasion on August 3, 2020 resulted in harm to an underlying action.  In fact, Moore does not point to a specific action or legal claim of any kind underlying this access to the courts claim, and he only alludes to a possible § 1983 action in the exhibits attached to the Amended Complaint.  He does not, however, set forth whether any such action was already pending or yet to be filed or what type of filing he sought to have notarized and how his inability to do so impacted the § 1983 action.  In sum, Moore has failed to plausibly allege any actual injury as a result of Defendant Keely's conduct that could equate to a denial of access to the courts, so the Court will dismiss these claims.  *See Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982) (noting that plaintiff did not meet his burden to demonstrate actual injury where "[t]he only 'injury' suffered by plaintiff was" him having "on one occasion[,] to wait ten days to have a document notarized" which resulted in plaintiff submit[ing] the document later than he would have liked but prior to the date it was due."). Accordingly, Moore's claim related to the denial of notary services on a single occasion will be dismissed with prejudice as amendment would be futile.

### G.     Claims Regarding Request for County Issued Footwear

Moore alleges that he received a Misconduct Report on August 13, 2020 after reporting to Defendant Brightler that he needed a new "pair of county issued footwear." (ECF No. 7 at ¶ 35).  Based on the Amended Complaint and the August 13, 2020 Misconduct Report, which Moore attached as Exhibit H, it appears that while in the yard of K pod, Moore threw his county issued footwear in the air toward a razor wire in an attempt to dislodge a hand ball that was stuck in the wire.  (*Id.* at 44.)  As a result, Defendant Brightler prepared the Misconduct Report charging Moore with "1) Tampering with security equipment[;] 2) Creating a Hazardous

Situation[; and] 3) Disruption of Normal Institutional Routine[.]" (*Id.*) Following this incident, Moore alleges that he did not receive new footwear for up to five days despite asking multiple times. (*Id.* ¶ 36.)

It is not clear precisely what legal claim Moore seeks to allege with respect to the allegation that he was without county issued footwear for up to five days. Construed liberally, it appears that Moore seeks to raise a claim that the lack of footwear amounted to an unconstitutional condition of confinement. As Moore was a pretrial detainee at the time of relevant events, the Fourteenth Amendment applies to his claims.[10] *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). "Unconstitutional punishment [under the Fourteenth Amendment] typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious" and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, a detainee generally must allege that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a

---

[10] Although the Amended Complaint does not specifically set forth his detention status at the time, having reviewed the public record related to Moore's underlying criminal offenses, it appears that Moore was a pretrial detainee at MCCF in the summer of 2020. *See Commonwealth v. Moore*, CP-46-CR-0006395-2019 (C.P. Montgomery).

different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Moore's allegations that he was without county issued footwear for up to five days after he threw his prior footwear at a razor wire where it got stuck do not rise to the level of an objectively serious deprivation so as to constitute a due process violation.  While he may have had to wait longer than he preferred to receive new footwear, it is clear that his request was responded to within a few days and, in any event, he has failed to allege that he was deprived of a basic need concerning his health or safety.  *Cf. Jones v. Schouppe*, Civ. A. No. 06-1083, 2008 WL 163049, at *4 (W.D. Pa. Jan. 15, 2008) (dismissing prisoner's unconstitutional deprivation claim where he alleged that he was "issued shoes worn by previous inmates" and was forced to walk around with holes in his shoes while he waited "3-4 months for a new pair of shoes" finding that these conditions were not sufficiently serious to violate the Eighth Amendment and instead amounted to the "inconvenience, discomfort, or indignity incidental to prison life.")  The brief time Moore spent without county issued footwear amounts to an inconvenience and discomfort incidental to prisoner life.  As he has not set forth a plausible claim regarding the conditions of his confinement, the Court will dismiss these claims with prejudice as leave to amend would be futile.

        H.        **Claims Regarding the August 8, 2020 Misconduct**

With respect to the August 8, 2020 Misconduct Report and the subsequent disciplinary action related to Moore's altercation with another inmate and his time in the RHU, Moore seems to be raising a Fourteenth Amendment due process claim.  The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the

'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

"[D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in light of that purpose.'" *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007)) (alterations in original). "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their

institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

With respect to the August 8, 2020 Misconduct Report, Moore appears to allege that his due process rights were violated when he was sent to the RHU after he was involved in an altercation with another inmate and was disciplined with time in the RHU. However, Moore has failed to state a plausible due process claim on this issue. The Amended Complaint makes clear that he specifically received written notice of the charge against him on August 8, 2020, the same day of the altercation, and prior to him being placed in the RHU. (*See* ECF No. 7 ¶¶ 22-23.) It is also clear that Moore received the written notice well in advance of his disciplinary hearing on those charges which occurred on August 12, 2020. (*Id.* ¶ 27.) There is no allegation that Moore was not permitted to call witnesses or present evidence. Following the hearing Moore also received the Report of Disciplinary Hearing Board attached as Exhibit D, which is a written statement from the hearing officer as to the evidence relied upon and the reasons for discipline. Accordingly, the Amended Complaints and the Exhibits demonstrate that Moore was afforded all process that he was due. *Cf. Blackwell v. Vaughn*, Civ. A. No. 97-3467, 2001 WL 872777, at *4 (E.D. Pa. July 3, 2001) (finding pro se prisoner failed to state a plausible due process claim where, even assuming a pro se prisoner "had a liberty interest in remaining in general prison population, there [was] no allegation that [he] did not receive all process that was due" where he failed to allege "that he was denied timely notice of the charges against him, an opportunity to be

18

heard, or a statement of reasons for decision."). Moreover, that Report demonstrates that Moore pled guilty to the misconduct charges brought against him and agreed with the officer's reports on the incident, (*see* ECF No. 7 at 16), which precludes him from demonstrating that he suffered an "atypical and substantial hardship" due to his placement in the RHU. *Cf. Booze v. Wetzel*, No. 13-2139, 2014 WL 1515562, at *3 (M.D. Pa. Apr. 17, 2014) (dismissing prisoner's due process claim with prejudice where he "admitted that his guilty plea at the misconduct hearing led to his administrative custody, and that he received periodic review of his status" because he could not establish that he suffered "atypical and substantial hardship" in light of his factual allegations). Accordingly, Moore's due process claim related to the August 8, 2020 Misconduct Report will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Leave to amend will not be granted as any such attempts would be futile.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will dismiss Moore's Amended Complaint with prejudice as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii). An appropriate Order follows.

                                                        **BY THE COURT:**


                                                        **/s/ Juan R. Sánchez**
                                                        **JUAN R. SÁNCHEZ, C.J.**